THOMAS A. SHEDD, *et al.,* v. ROSE OLIVER

198 So. 692
Division A
Opinion Filed November 19, 1940
Rehearing Denied December 6, 1940

776

Loftin, Calkins, Anderson & Scott, for Appellants;
C. C. Youmans, for Appellee.

TERRELL, C. J.—Rose Oliver and her daughter, Minnie Oliver, placed in the hands of their attorney a large sum in liquid assets to be converted into cash and invested in real estate mortgages in the Miami area. The attorney deliberately converted the whole sum in his own use and repeatedly misrepresented to his clients the manner in which he had executed the trust imposed in him.

When Rose and Minnie Oliver became convinced that their attorney had betrayed them in the manner stated, they brought an action at law to recover the funds embezzled and later they filed a creditor's bill to subject stock owned by him in Venetian Club, Inc., to the payment of their claim. The creditor's bill was amended so that it now stands in the name of Rose Oliver to collect $47,000, being the amount of U. S. Treasury bonds entrusted to their attorney, July 9, 1935. Other suits were brought to recover the remaining funds entrusted to him. The creditor's bill is predicated on fraud and collusion on the part of complainant's counsel and his confederates in attempting to sequester the stock in Venetian Club, Inc., and to remove it from liability to respond to any judgment secured by complainants to the creditor's bill.

The main question before the chancellor turned on the answer to the query: Who owned the stock in Venetian Club, Inc.? Affirmative defenses were interposed by defendant to the effect that said stock belonged to others who were in possession for value and in good faith. A large volume of testimony was taken on the issues so made. The master and the chancellor found for the complainant and the chancellor decreed accordingly. This appeal is from the final decree.

Appellants contend that the judgment below should be reversed because complainant did not carry the burden of proving the ownership of the stock to be in defendant, her attorney, or that it was fraudulently conveyed by him to avoid process against it.

We recognize the rule invoked by appellants and nothing said in this opinion is to be construed as departing from it but an examination of the evidence fails utterly to bring them within its protection. The burden of proving an affirmative defense is no less imperative than that of proving the main allegations and weakness in proof of the former may aid the proof of the latter.

The evidence as a whole presents a dirty spectacle. It proves conclusively the rape of one of the most sacred and confidential relations known to democratic society, that of attorney and client. The attorney does not deny the embezzlement, yet he seeks escape from its consequences through a labyrinth of technical defenses that he failed to prove to the satisfaction of the chancellor and he now importunes this Court to relieve him because the chancellor believed the complainant's evidence instead of his and without an offer to restore that which he embezzled. The power of a chancellor to grant relief is as broad and deep as the plan of salvation but it takes more to induce it to act than it does to move a windmill. There is no better predicate for

equitable redemption than a proposal to restore the *status quo*. It is the surest sign of repentance, a guaranteed measure of the chancellor's foot and the surest road to a judgment in favor of the one who seeks it. Nothing said in this opinion has any reference to Shedd or his counsel.

In every litigated cause, the Court is confronted with the burden of finding the truth of the controversy and when done, it becomes his duty to administer justice. In the administration of justice, he has a responsibility to society equal to that due the litigants and in tipping the scales, he dare not overlook his dual responsibility if he would save the system he administers from reproach.

Justice must be administered by rule but the rule by which it is administered will not be permitted to defeat it. Rules are designed to lead the Court to the right between litigants, not away from it. Under the facts adduced in this case, we see no other conclusion the chancellor could have reached. Any other would have amounted to a whitewash of fraud and rascality on the part of appellees' former counsel and would have converted a search for justice on the part of complainant into a legal snipe hunt, a new phase of the old sport of battledore and shuttlecock. Procedural law should not be permitted to so degenerate.

Affirmed.

BUFORD and THOMAS, J. J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.